Our third case for argument today is Jeremy Meyers v. Nicolet Restaurant of DePere. We'll hear first from Mr. DeRay. And for the record, that's appeal number 16-2075. Good morning, Your Honors, and may it please the Court. Matt DeRay for Plaintiff Appellant Jeremy Meyers. There's a couple issues that I would like to address today. Obviously, we're here on a 23-F petition and an appeal of the District Court's denial of the motion for class certification. However, the appellee raised the issue of Article III standing relative to plaintiff. And since that is a threshold issue before we can move on to the class certification issues, I'd like to address that first. The decision in Spokio from the U.S. Supreme Court has created a lot of mixed decisions as far as what applicability it has and the implications it has on Article III standing. But I do think that, for the most part, it really does not change the previous understanding of Article III standing. And it really does not make any substantive changes to the underlying law on what a plaintiff needs to do to establish standing. Prior to Spokio, it was clear that plaintiffs could not just allege a bare procedural violation, as was the case in Lujan, for example, where there's no actual injury to themselves. However, at the same time, the cases prior to Spokio and after have made clear that that doesn't require some actual damages, for example, to establish an injury for Article III standing purposes. It's well settled that Congress can create substantive legal rights, and the invasion of those rights is sufficient to establish an injury for Article III purposes. Is it a statutory injury? Yes, a statutory injury. Because that's the only injury you have here, right? That's correct. If you call that an injury. That is an injury, because Congress, number one, can create substantive legal rights that citizens have, and the invasion on those rights constitutes an injury for Article III standing purposes. Spokio did not go that far. It said it can do so, not that every time it does so, it will be recognized, right? That's correct. So help us draw the line. So Spokio concerned procedural rights and procedural statutory rights. And when there's a procedural statutory right, what Spokio said was in certain instances, the violation of a procedural right is not sufficient, absent some other harm. However, there are certain circumstances where Congress has articulated a very distinct chain of causation between a procedural violation and the threat of harm or the risk of harm that would be sufficient to establish injury for Article III purposes. So in the case of your client, the concern, as I understand it, is that the appearance of the expiration date on the receipt that he got from the restaurant, which he spotted, it's hard. In theory, there might be some increased risk of identity theft. But he spots it.  Well, that is Congress's judgment. In Congress's judgment, they can assert what they think the risk is. And Congress in this ---- I understand that. But Spokio makes clear that Congress is not necessarily the final word on this. So why should this statutory violation with respect to somebody who seems to be at zero risk be recognized as providing an injury in fact in Article III standing? Well, in this case, that's in the context sometimes of a ---- Spokio dealt with procedural violations. Here there's a substantive right, and Congress has said, you as an individual have the substantive right to get a receipt that does not have the expiration date, does not have this information on it. That's the same thing as this Court's previously held in relative to the Fair Debt Collection Practices Act. I believe it was Keele where there were certain disclosures and certain language that appeared on a letter that went from a debt collector to a debtor. And this Court said, no, Congress said you have a substantive right not to receive this information even if you didn't owe the debt, even if that didn't affect you in any way. Congress said you shouldn't have to get this. And so, therefore, getting it invades that substantive statutory right. Keele was some years before Spokio, however, correct? It was. But Keele and the other cases that are cited in the brief that have to deal with substantive statutory rights, I think are a different area than what was addressed in Spokio, which had to deal with procedural violations and procedural rights that are ---- So these procedural ---- Do we measure the difference between procedure and substance by risk of harm or in some other way here? I think that the line between procedural and substantive is that a procedural right is implemented without regard to a particular outcome. It's only about how you reach a particular outcome, whereas a substantive right is enacted with regard to an actual particular, this is what needs to happen, this is what cannot happen. And it is more focused on the results-based as opposed to how you get there. For example, in Spokio, when they were dealing with the provisions of the FCRA at issue in that case, it literally said these companies will establish reasonable procedures to ensure maximum possible accuracy. They didn't say you have an absolute right to total accuracy and that they will not publish any false information. That would be more in the line of a substantive, whereas here with Spokio, it was a procedural right, because they said you're going to do your best to try to make sure that this will be as accurate as you could possibly do it. And so that's why the Spokio court decided to remand to the Ninth Circuit, because they would say, well, at what point does that procedural violation cross the line into something that creates harm? Whereas when you have a substantive issue where they say you will or will not do this, you're protected from this, you have a right to not get that, that is the right itself. So let me go back to my first question. How does the number on the receipt given to your client hurt him when he sees it and makes sure that nobody's going to have it to steal his identity or to help steal his identity? The number on the information that was on his receipt is a harm for Article III standing purposes because he had a substantive right to not receive that information on his receipt. That sounds totally circular to me. He had a right because he had a right. And I don't see how that satisfies the analysis of Spokio. He was harmed because he had the right to get something. How? Because Congress articulated that this is a legally protected interest. We define legally protected interest all the time. The Spokio court talked about things at common law. Property law in general is a legally created set of, it's the bundle of sticks that says these are your legally protected interests in this property. If someone throws a baseball over your yard, that is technically a trespass and they have invaded on your legally protected interest, even though there's maybe nothing actually comes of it, it maybe displaces some error. And so I don't think that Spokio went so far as to say you need to have, that you need to have some other harm other than the invasion of a legally protected interest. I don't even think Spokio really addressed that issue. They were talking about this in the context of procedural violations and in that case where the procedural violation is divorced from the harm that Congress was trying to prevent, that's where they said, well, now you have to show how that harm has manifested or how that's come. Whereas when there's, and there are some procedural violations that are so synonymous with the harm that Congress was trying to prevent, where the violation of one of the procedural right is a substantive harm. What's the statutory, what is it, $100 to $1,000 range? That's correct. I mislabel it as a punishment for doing that? Yeah, I mean, as far as Congress's purposes, that was one of the purposes. A deterrent maybe? Yeah, it's a deterrent effect when they want to ensure that this isn't going to happen because they've identified this extremely high risk of identity theft. No one can figure out why that was added. I can understand the numbers, you know, what is it, you can only put five and some of them four? Yeah, the last five. You can put a bunch of numbers on your credit card, sure, that could be an invasion, not just of privacy, but obviously it would be exposed to serious damage. But it's almost like it's an accident they put that in there. And then another thing, I know since we're looking at this case, I'm very conscious of do you want the receipt? I really don't, but I'll take it anyway, especially at the gas station. And I know they do. Now, some places they don't ask, but most people ask if you want it because, sure, they're going to have an expense, you've got to have it to prove that they've spent that kind of money, and that's reasonable. That's a practical reason for having a receipt. But otherwise, all these people going to this restaurant, I could see that there would be a bunch of people in the restaurant and somebody said there's going to be a class action. They say, are you kidding? They're going to damage this restaurant. I love it. They're going to shut it down. This is crazy. Well, I understand all that, but at the same time, Congress has the authority to pass the laws. It's Congress's province to determine what the punishment should be, what the laws should be, what the requirements should be. And in this case, that's what they decided it to be. And while the law is on the book, we need to enforce it. I'm heading into my rebuttal time, so I'd like to address some of these things more in a moment. Thank you. And your last comment, counsel, please keep in mind that Spokio tells us that Congress is not the last word on that subject, and that's where we need some guidance. Thank you. For the defense, is it Mr. Graff? Good morning, Your Honors, and may it please the Court. I have to apologize. Before I end, if my voice goes out or it kind of gets a little lower, my son was nice enough to give me his cold yesterday. So my colleague, Nicole Radler, and I represent Nicolet Restaurant, which is a singular restaurant up in DePere. It's a family-style restaurant, small, has good fish fries and soups, as Judge Pannion was alluding to. I love this place. Judge, you're absolutely right that Mr. Myers is asking this Court to draw distinctions that the Supreme Court didn't draw between substantive and procedural rights. They didn't draw those distinctions. And I heard counsel just a minute ago say, well, you have a substantive right to get the receipt, and that's different from the procedural right in Spokio. Not necessarily true, because at the end of the Spokio majority opinion, they talked about the notice that you get under the FC FCRA. And you could make the argument that you have a substantive right to get that notice. Again, Spokio was all about Congress can identify intangible harms. We don't quarrel with that. And Congress can pass a statutory scheme to try to mitigate, lessen those intangible harms, like the potential that your identity might be stolen or increased risk of identity theft. Or you look at the Cable Communications Act saying cable companies can't keep your information longer than they need it for because they may be out there. These are intangible harms that Congress can identify, and they can pass a statutory scheme. But a simple violation of the statute isn't enough for standing. You need more. You need concrete harm. And that's either actual harm or the real or material risk of harm. And Mr. Myers has never argued that he sustained actual harm, and he's never sustained that he's been at a material risk of harm. And that's for two reasons. The first reason is exclusive to him. And the second reason is exclusive, not exclusive to him. It applies across the board to anybody who would have been given a receipt at Nicolet Restaurant. The first reason is, as Your Honor alluded to, Mr. Myers knew immediately when he got this receipt it didn't comply. And he knew that because in the 2000s he worked at Outback Steakhouse, and one of his responsibilities was to make sure that their receipts complied when this law was passed. So in an interesting string of events, Mr. Myers, he had another case up here a couple of months ago that was the district court's decision was affirmed by this court on statutory immunity, but it ties into this case because a few days before he goes to our restaurant, he goes to the Oneida one-stop gas station, gets a receipt that doesn't comply, doesn't realize it doesn't comply. On the 10th, February 10th, he goes to our restaurant, gets the receipt, and immediately has the aha moment. I remember this time I was at Outback Steakhouse working, and this receipt doesn't comply. Let me check the receipt I got at Oneida gas station a few days before. Oh, that one doesn't comply either. Then subsequent to that, he goes to another Oneida gas station to test if their receipts comply. So, again, Mr. Myers was never at a risk of harm, didn't sustain actual harm. The more general reason why nobody who got a receipt from Nicolet Restaurant was ever at a real risk of harm is in the 2007 Clarification Act for this law where Congress explicitly says that properly truncating or getting rid of the account numbers, which we did at our restaurant. We properly got rid of the account number. Properly truncating the account number, even if it includes the expiration date, does not increase your risk of identity theft. So anybody who got a receipt from us was not at an increased risk of identity theft if they would have thrown that receipt away, which, of course, Mr. Myers didn't. He kept a hold of it, found a lawyer, attached it to a complaint. So that's the real issue here. It's not is it a substantive right or procedural right. It's that was there a real risk of harm or was there actual harm. It sounds like you're urging us to adopt a decision, a basis for decision, on standing here that is specific to the expiration date violation only. Is that right? Not entirely accurate. I think you can do it on either basis, the first basis being this is a man who had knowledge of the law and never lost possession of the receipt. Yeah, the problem I have with that is Congress here clearly took a step to, in essence, a prophylactic measure, right? We don't like identity theft. Our constituents want us to take effective measures to do that. Here's one route to identity theft with credit card receipts. So we're going to impose these requirements. Obviously, a violation will not inevitably lead to identity theft, but we need an effective means of enforcement. We could create a new federal agency that would go around and inspect all these things, or we could create a private right of action and rely on private attorneys general to enforce this, right? And the folks who are most likely to take that step are the ones who are most likely not to be harmed themselves, because they're going to be protecting themselves. But if we take away that incentive and say no standing, we effectively remove the enforcement mechanism that Congress put in place. Or am I overstating it? And if so, why? I don't know that you're overstating it, but I think that's what Article III requires. Article III requires that you be at a real risk of harm or you're actually harmed. And, again, Congress in the 2007 Clarification Act talked about this and said, look, we're trying to protect those people who have their identity stolen, but we're not trying to do it at the risk of hurting business. And the Clarification Act is not a way out on the merits for me because our violation came later. But, again, I think that's pretty clear that Congress was concerned about business and they were concerned about identity theft. And, again, if Mr. Meyer's identity was stolen or if any other plaintiff's identity was stolen, we wouldn't be here arguing about standing, but that's not what happened. And if you look at the cases I cited, the Thompson case out of, I believe, the Eastern District of Missouri and then the Kamal case out of New Jersey, those courts dealt with the same issue, whether a plaintiff who was provided a receipt that technically didn't comply with the statute but had no real harm and no real risk of harm satisfies Article III standing underspoke you. And both of those courts said absolutely not. And there was a discussion in Thompson about what a real risk of harm might look like, that somebody unsuspecting throws a receipt in the trash, now it has too much information in it, they find out later and now they're worried. They're calling their bank. They're calling their credit card companies. They get a product like a LifeLock. They contact Experian. There's some harm to them or something they had to do. Mr. Meyer's didn't do any of that. Mr. Meyer's didn't contact his bank. He didn't contact Experian. He didn't contact LifeLock. He didn't even tell his friends and family members, hey, stay away from Nicolet Restaurant because their receipts don't comply. So, again, and getting to counsel's point about the Seventh Circuit, now the Keel case and the Phillips case, I think you can reconcile those with spoke you because the court in those two cases, the Seventh Circuit in those two cases never said, well, there was a violation of the statute so automatically they're standing. In Phillips, the issue was a lawsuit was filed that shouldn't have been filed, and the court looking at standing said, well, that lawsuit being filed may have the potential to cause harm to the plaintiff because the other creditors might look at that and take some sort of action. In the Keel case, it was a debt collector. Somebody sent a letter saying you owe us a $12.50 collection fee, and, again, the risk of harm there is the unsophisticated person might think, oh, shoot, I have to pay the $12.50. So, again, it was a risk of harm analysis in both of those. What Spokio got to and what Spokio addressed, and this is important because the Hammer case was raised by Mr. Myers here, what Spokio addressed was what was in some circuits called the absolute rule of standing, and the Eighth Circuit was one of the circuits that had this rule, which said if Congress passes a law and you're alleged to violate it, that's enough. You don't need to show harm beyond that. A violation of the law is enough. And Hammer came out of the Eighth Circuit and dealt with this receipt issue in the FCRA. Subsequent to Spokio, the Eighth Circuit came out with a decision, Breitberg, it was, I think, September of 2016, and in Breitberg they recognized that in light of Spokio, Hammer is no longer good law, that Spokio superseded that absolute rule of standing, and a violation of a statute alone is not enough. I would interject something because it's just a question I wanted to do a comparison because an irritant of me, my own irritant, is the fax and plaster cases. The what, sorry? Faxes. When somebody receives an unwanted fax, then there's another one of these, I don't know what the range is, $100 to $1,500 damage. And we've had cases in here where the lawyer says he's got over 100 of these cases, and they have standing because they got an unwanted fax. So I assume the difference between those cases, where we've got way too many of them, that this receipt is not unwanted. It's necessary for some. It's a requirement. And I guess I don't know if you're familiar with the fax blasting cases, the faxes? Very vaguely. Some of the cases we've dealt with that. I wish it were vaguely here, but we have a lot of them, or used to. Maybe faxes are obsolete now. Except for me. So I'm just curious. I'm making that comparison. Because you get an unwanted fax, you know, when one plaintiff can raise the file of suit, try to get a class action, and he goes on discovery and finds out there's a whole lot of, you sent a whole lot of these faxes, the next thing you know they put somebody nearly out of business when they can find enough of them. And I'm just curious. This is different. This is much narrower than that. There's nothing unwanted about this receipt. That's true. And I don't necessarily think, I mean, you'll have to deal with those cases on the merits. But, again, I think when you get back to Spokio, it deals with, as Judge recognized, Congress can pass laws, they can recognize harms, but they're not the last say. Well, it's got to be a harm. There has to be a harm. And it can be an actual harm or it can be a real material risk of harm. And I think the courts are going to have to deal with this and figure out what material risks of harm are in these consumer protection statutes. But I don't think we can start drawing distinctions between substantive and procedural rights, because that's not what the U.S. Supreme Court said in Spokio. They didn't draw a distinction. Counsel, can I ask you about one of the things that concerns me about the class certification denial was the basis offered for distinguishing the Mullins against direct digital case, another consumer class action. And the district judge said, in this case, defendant was at most reckless to the potential security of its customer's identities. There is no concern the defendant committed any fraud or even did anything wrong. Now, that troubles me because I think we have to work from the premise that your client was, in fact, violating the statute dealing with receipts for credit cards, right? Yeah, and I think what the court was trying to drive at, and I'm not trying to put words in the court's mouth, and I think we in our brief distinguished it a different way by saying the court in Mullins was specifically focused on a heightened ascertainability requirement, which I think there are going to be problems ascertaining the class in this case, but that's not what we argued, and that's not what the court based its decision on. But looking at what the court had to say relative to the fraud and harm, in Mullins, you had a concern by this court that if they don't certify the class, a major fraud upon a lot of people was going to go unpunished. In Mullins, the defendant was claimed to have sold, I don't know if it was a weight loss drug or some sort of drug, some miracle drug that was a sugar pill at the end of the day. So, again, I think the court had to be concerned that some major fraud was going to go unpunished. Here, did we technically violate the statute by having the expiration date on the receipt? No question. But if you look at Congress in the 2007 Clarification Act and what they said doesn't really raise the risk of harm, and you look at nobody was harmed here and the proposed class is people who were not harmed, I think the judge was trying to draw a distinction there and maybe it gave opposing counsel a little ammo to attack him, but I think his reasoning was solid on the class certification issue and it was consistent with those cases from the Seventh Circuit that say, look, if we certify a class and we're just going to have a bunch of individualized depositions, individualized fact-finding, individual testimony, which you will have in this class. I mean, none of these people are going to have kept their receipts. It will essentially be one question, right? Did you get a receipt, right? For every member of the class. Yeah, sure. Well, you can do the same thing in Mullins. I mean, that's the nature of the piece. But referring to the 2007 Clarification Act, can you just remind me exactly where to find the material you're talking about? I've got it right here. It's sub A, sub 6, and do you want me to quote you the specific language? And is it statutory or committee language? It's right in the law. Okay, please. Experts in the field agree that proper truncation of the card number by itself, as required by the amendment made by the Fair and Accurate Credit Transactions Act, regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card fraud. And that's A6 of what? A6, it's, sorry. I have HR 4008. We have the specific site in our brief. That's what I was just looking for. What we have in our brief is Pub L number 110-82, section 2A6. I don't see that in the table of authorities, but that's probably enough to find it. Okay, thanks. And my time is up. Thank you very much. Thank you very much, Mr. Graff. Mr. DeRay, rebuttal? Thank you. Just very briefly, before I step down, the Court mentioned that SPOCIO doesn't necessarily stand for the proposition that Congress has the final word. But in the text of SPOCIO, the Court acknowledged itself that Congress can articulate chains of causation that give rise to an injury where none existed before, and that the risk of real harm satisfies concreteness. And in those cases, you need not identify anything beyond what Congress identified as giving a risk of harm. So here, Congress has said, there is a risk of harm when you print this number on the receipts. In fact, if you respond to this point about A6? Yes. So that is true that in the Clarification Act, in sort of the statement of purpose behind it, what happened with the Clarification Act is they retroactively went back and said, just expiration date violations prior to this date are no longer going to be, you can't sue over them. However, Congress didn't do anything going forward. So if there really was this realization that, you know what, the expiration date really doesn't make a difference, Congress in its judgment could have repealed that part of the law. They could have nullified it going forward as well, but for whatever reason, they didn't do it. And so as the law stands right now, that is something that Congress says you cannot do. And that is something that Congress says there is a significant risk of harm from doing it. In fact, if there were a hundred percent compliance with the law, there would be absolutely zero risk of identity theft from credit card receipts because the credit card receipts would definitely not contain the information that Congress was concerned about raises the risk of identity theft. And I think that's another area where Spokio is distinguishable because in that case, like I said, it doesn't ensure maximum possible accuracy. And they said, you could have reasonable procedures and the information could, you could have something very trivial wrong. At the same time, you could have totally unreasonable procedures and just luck out and get everything right. So in that case, a hundred percent compliance with the statute wouldn't necessarily guarantee the actual end, which was, you know, full and correct information about consumers. Whereas in this particular provision of the statute, it says a hundred percent of the time, if they comply, there's not going to be an, there's not going to be a risk. Very briefly. I would like to turn to the class certification issues. I think that the, the issues really speak, speak for themselves as far as there is a general issue here of defendants willfulness. That's going to establish liability to every single person that was provided a receipt. And the only other individual questions are who's in the class. And as the court noted, if someone comes in and says, I got a receipt, I always get a receipt. I, this is something that I got. They are defined as being in the class. And I just don't know how that would predominate over the, and be superior to the, to the issue of common liability. Thank the court for this time. Thanks to both counsel for the helpful presentations. The case is taken under advisement.